Good afternoon. We will hear argument in Miller v. Horn. Ms. Polzetti. Good afternoon, and may it please the Court. Maria Polzetti for Appellant Joseph Miller. We are here today on one issue, whether my client, a mentally retarded, brain damaged man who was suicidal at the time, gave a valid waiver of his Miranda rights before speaking to police, and whether trial counsel was ineffective in failing to present evidence of my client's impairments at the suppression hearing. So you agree that claims one and three are moot? I agree. I was just about to say that, Judge, yes. I'd like to present the argument in two parts. First, I'd like to talk about Joey Miller's impairments and their effects on the invalidity of his waiver. And second, I will address the habeas statute and standard of review here. The uncontested evidence of Mr. Miller's impairments leaps from the records, and yet none of it was presented to the suppression court. Mr. Miller is mentally retarded. Most recently, the Commonwealth tested his IQ before the Atkins hearing and found his IQ to be 58. Mr. Miller is brain damaged. This is also uncontested among all the experts who examined him. He has related cognitive impairments separate from his mental retardation. But at the same time, he had in the past, in other encounters with law enforcement, exercised his Miranda rights, both waived them and said, I want to talk to a lawyer. Doesn't that demonstrate some comprehension of what this is all about? I think, Your Honor, I think, first of all, at the suppression hearing, there was actually evidence of three prior occasions when Mr. Miller had spoken to police. And on all of those occasions, he did not exercise his Miranda rights. He actually waived his rights and gave a statement to police on each of those three prior occasions. So I think the Pennsylvania Supreme Court may have been simply careless when it used the word exercise instead of simply using the word that he had heard his Miranda rights before. But he certainly had seen what happened when he was told he didn't have to give a statement and gave one, and it came back and was used against him in the past. Judge Turgeon's opinion on the suppression hearing and this particular issue that Judge Roth has just raised covered five pages. I mean, it was very detailed, explaining how in those, I think it was only three or four prior experiences, and we know now that he had much more familiarity with the criminal justice system than even those incidents. It was pretty thorough analysis, wasn't it? Well, I think Judge Turgeon's analysis at the suppression hearing, of course, she didn't have this evidence that has been presented later to the court that was presented to the post-conviction court. Well, that's right. But what she did have and what she did discuss was his prior familiarity with the criminal justice system and Miranda specifically, didn't she? She did discuss that in her opinion. I would argue that the fact that my client had waived his rights on three prior occasions doesn't necessarily indicate that he gave a knowing, intelligent, and voluntary waiver on these occasions. Well, we're not here to litigate whether or not the three prior waivers were or were not involuntary. We have to assume that they were. We do. We're here to litigate the waivers in this case, of course. And as I was saying, the uncontested evidence of Mr. Miller's impairments actually, I think, helps to explain why these waivers are invalid. In addition to his mental retardation and brain damage, he suffered terrible sexual and physical abuse as a child from authority figures, both family and in juvenile incarceration. And he was, of course, suicidal at the time. He gave all these statements. And specifically to Judge Roth's question about experience, Dr. Miller, who was... Was he suicidal when he gave these statements? Is that the record? That is the record, Your Honor. And he was suicidal? He was put on suicide watch. But does that mean that he was suicidal? He was put on 15-minute suicide watch. And also, when he spoke to police, both on the 11th and the 12th, of course, on the 6th, he attempted to jump off the roof. So I think that speaks for itself. On the 11th and 12th, he indicated a desire for the death penalty on both of those days. Yes, but I don't know. Well, I've interrupted you too much. I will not do it again. For another minute or two. For a minute or two. So Dr. Miller, who was the Commonwealth's expert at the PCRA hearing, testified that helped us understand the implications of Joey's impairments. And specifically, he said that Joey has an inability to profit from prior experience and learn from his mistakes. I think that goes a long way toward explaining evidence that wasn't before the suppression court that we're saying should have been before the suppression court and explaining why Joey maybe didn't learn from his prior experiences. Dr. Miller also said, quote, it is clear that Joey's deficits would affect his ability to reason things through and reason the consequences of his conduct. Again, understanding the consequences of the decision to waive your rights is a relevant part of the inquiry. He also testified that Joey has difficulty reasoning and difficulty understanding abstract concepts. And I think it's also relevant to look at the Supreme Court's looking at mentally retarded criminal defendants. And the Supreme Court relied on abundant evidence that criminal defendants both do not understand their Miranda rights and there's a high likelihood of false confessions. That was an Eighth Amendment case, though. It was, in fact. But if you look at pages 318 to 321, there's an extensive discussion of this. And I'm not saying that the Eighth Amendment applies in this case. I'm simply saying with the discussion there about the suggestibility of mentally retarded defendants, the restricted affect and how that means that people don't necessarily understand what their responses are, their strong desire to please authority figures, those are all relevant and they were testified to on post-conviction and yet they were not before the suppression court here. I think, unless you want to have further questions now about Mr. Miller's impairments, I'll move on to some of the procedural matters. Of course, AEDPA applies to this case. And I think the most important opinion for this court to look at is the Pennsylvania Supreme Court opinion both on direct appeal and after post-conviction. In post-conviction, the Pennsylvania Supreme Court simply reaffirmed its ruling on direct appeal despite the abundant evidence of Mr. Miller's impairments that had finally been presented to the courts. And its ruling that it reaffirmed by telling the court that it was previously litigated, its ruling was all that is necessary for a valid waiver is that the defendant's rights be reasonably conveyed to him. Now, this is an unreasonable application or contrary to controlling federal law. And for that reason, this court reviews its claim de novo and does not have to look at the claim through the lens of AEDPA. Well, if we review them de novo, why would we have to come to a different result? I mean, if we were to review it de novo, if we don't accord deference, let's say, an argumento to the Supreme Court, couldn't we come to the same conclusion that he knowingly and voluntarily waived his Miranda rights and that counsel was not ineffective? Yes, you could come to the same conclusion. I completely agree. Whether you look at it through the lens of AEDPA or whether it's reviewed de novo, the same conclusion could apply. And if you're interested in that question, the Pennsylvania Supreme Court, of course, on post-conviction said that it was reaffirming its earlier decision and therefore it was not previously litigated and looked at the claim. So our position is that one does not necessarily need to look at the trial court opinion. But if we were to look at the trial court opinion on post-conviction, it is also unreasonable in that it does not address any prong of the Miranda inquiry except for voluntariness. And therefore, because it's not a complete application of the test, it's also unreasonable. So then again, we look at the claim de novo. I think if we're going to talk about the Pennsylvania, the PCRA trial court opinion, there's one part of it that I would like to point out to your honors. It's on page 32 in the section discussing this claim, of course. And the trial court makes a legal conclusion here. The trial court discusses Dr. Armstrong's testimony and says, we are not persuaded by this testimony. It is well established that a low IQ or mental instability does not per se invalidate a confession. Furthermore, confession by a mentally ill person is admissible and voluntariness can only be raised where coercive activity has been shown. Now this is, of course, this illustrates the limited scope of the trial court's review here. They only are looking at voluntariness and coercion. They are not looking at the other aspects of the required inquiry. And they are, of course, actually, they are crediting Dr. Armstrong's and the other experts' testimony at the PCRA hearing where they said that Mr. Miller has a low IQ, he's mentally unstable, and has mental illness problems. So here the trial court credited that testimony and yet made a legal conclusion that it did not persuade the court. I think I'd like to talk a little bit about trial counsel's ineffectiveness in presenting this evidence to the court. Now trial counsel attempted to argue mental retardation at the suppression hearing. If you look at page 253 of the suppression hearing, trial counsel, after presenting no witnesses at the suppression hearing, said, I would like to argue mental retardation and if this affects the validity of the waiver. And the court said, no, you have presented no mental health evidence, no mental retardation evidence, none of that is before me, and that's not part of your claim here. So I think that shows both that the court had no evidence before her and that trial counsel was aware of at least some of Mr. Miller's impairments, as anyone would be who interacted with Mr. Miller would be aware of his impairments, and yet did not do the necessary preparation and investigation to present this evidence to the suppression court. Counsel did present some evidence regarding Mr. Miller's mental retardation, his child history of physical abuse and sexual abuse and deprivation, and some evidence related to his brain damage was all presented at the penalty phase. So we knew that counsel was aware of this evidence and had the ability to present it to a court, and yet for whatever reason, which is clearly deficient, did not present it to the suppression court. Miranda cases, as you know, are looked at through the Brecht standard for whether the lack of this evidence had a substantial and injurious effect on the outcome. I argue that the confessions against Mr. Miller were the only evidence that the Commonwealth relied upon. They were extremely important evidence relied upon during the trial, and without these confessions, we all know how much credit a jury gives to the confessions of the defendant himself. Without these confessions, there is definitely at least a substantial and injurious effect upon the jury. And also because the trial court at the suppression hearing asked for evidence of mental health or mental retardation which had not been presented, we can see that had this evidence been presented to the trial court, there may have been a different outcome at that point also. The trial court said there wouldn't be. I'm sorry? Did she make that finding, that if it had been presented in 1993, it wouldn't have changed her decision? At the PCRA level, the trial court did say that prejudice was not found for the evidence that was not presented. I would say that that's an unreasonable application. In Terry Williams, the Supreme Court case, we can see the court's failure to consider the totality of the evidence that has been presented to it. In that case, it was mitigation evidence. Here, of course, it's Miranda evidence. That can be unreasonable under Section 2254D. And although we're not actually even looking at the trial court's opinion, since we're looking at the Pennsylvania Supreme Court opinion. Are we looking at the trial court opinion in terms of ineffectiveness, though? Well, the ineffectiveness issue was raised on PCRA. And therefore, the Pennsylvania Supreme Court had a chance to view it and did view it and said in the face of all this evidence and this whole claim, I am going to reaffirm the decision issued on direct appeal. Therefore, the direct appeal decision controls and the post-conviction decision does not control. Even as to an issue that wasn't raised? It was raised. The ineffectiveness was raised on post-conviction. But not on direct appeal. It was not raised on direct appeal. But for whatever reason, I don't understand the logic of the Pennsylvania Supreme Court necessarily. But for whatever reason, they found there. I think we probably do have to look at the trial court's opinion vis-à-vis the ineffectiveness claim, which came later and was not at least in hake verba before the Supreme Court, certainly not on direct appeal. Well, if we do look at the trial court opinion, we can see that the trial court opinion, as I said earlier, is only about the coercion and the voluntariness and does not accord any appropriate weight to Mr. Miller's mental retardation, to his brain damage. And the trial court said that even if there had been evidence of those things, she would have come to the same conclusion. The statements would have stood. That is what the trial court said. And, of course, the question before this Court, if this is viewed through 2254D, is not whether that's what she said, but whether, in fact, her conclusion was reasonable. Okay. I reserve the rest of my time for rebuttal. Thank you. Good afternoon. May it please the Court. Francis Chardo for the appellees. Your Honor, the defendant or the appellant is under three life sentences, only two of which are at issue here today, the two from Dauphin County. You alluded to the prior experience with Miranda. In fact, there were at least three prior ones. In 1984, a burglary case, he was Mirandized and waived. In 1990, an arson, Mirandized and waived. And then in 1987, in connection with Selina Franklin's murder, he's questioned. In fact, he follows, invokes more or less, in that he goes and gets a lawyer. The testimony at the suppression hearing was that the detective saw him sitting across the street on the steps of Joshua Locke's office, an attorney who had an office across the street from the police station. And when he asked him, what are you doing, he said, I decided to go get a lawyer. And that was shortly after he'd been Mirandized. So clearly, by his conduct, he indicated that he understands Miranda. He went and did just what Miranda says you can do. You can get a lawyer. And that's just what he did. The brief of the appellant talks a great deal about the stress under which the defendant was under. Of course, that was on August 6, 1992, during that standoff. His only confession on that date is to the Clara Johnson rape and attempted murder. He denies involvement in the murders. It is days later, on the 11th of August, at his initiation, he contacts the police. No challenge made to the August 6th here, is there? I'm sorry, there is no challenge. But there was a reference to the stress which he was under. Of course, that's long over. Five days later, he sends a note to the police saying, I want to talk to you about the other murders. He initiates it. He's brought. He's treated with great deference. And there is no coercion whatsoever. He is Mirandized. And he waives his Miranda rights. And he gives a confession to these brutal murders. And, in fact, leads the police to where the bodies are found. They had not been found to that point. He has demonstrated, while he may be, as the finding that we're bound by, mentally retarded, the Colorado v. Connolly requires that there be something more than some deficiency in the defendant. And Judge Turgeon's opinion alludes to that. That there is a requirement of some official coercion. And there is absolutely none. In fact, he's treated very decently. He's Mirandized. He's accorded every courtesy. And it is at his initiation that this interview occurs when he confesses and leads the police to the bodies of these two women who have been brutally murdered. I think that, based on the clear law of Colorado v. Connolly, the decision of the Supreme Court of Pennsylvania and of the trial court is completely reasonable. And the factual findings regarding his prior experience with Miranda dictate the result that follows. Thank you. He was convicted 15 years ago. Now, don't read anything into this question. I mean, if you were to have to do this over again, is there anyone still around? There are. Some of the investigators, as I recall, are no longer alive. But Detective Brennan, who took the one confession, he actually testified in the Atkins hearing regarding the sophistication of Mr. Miller. But you do bring up the point, though, that it's 15 years ago. And hindsight's 20-20. It's trite to say, but counsel is talking about Atkins and about retardation. The law of the land then as now is Colorado v. Connolly. And we didn't even know that Atkins existed in those days. Any questions? Thank you. Thank you. Rebuttal. I'd like to just clean up a couple of things. Actually, the statement on August 6th is also before the court. You'll see it has been briefed. It was not related to the homicides, but it is also before the court. I'm not sure I have something here. But anyway, go ahead. More importantly, I had a chance to look back quickly at the PCRA trial court opinion. And I noted that actually I misspoke earlier. It's not that the PCRA court ruled on prejudice. They simply found that there was no merit, and therefore they denied the ineffectiveness aspect of the claim without looking specifically at prejudice or at deficient performance. They simply said this claim has no merit. And accordingly, trial counsel was not ineffective for failing to present this evidence. So I think we don't have a reasoned ruling from them specifically on the prejudice question that you were asking about. And as far as Colorado v. Connolly, which is argued by the Commonwealth, that case is solely about voluntariness. It is not about knowing or intelligent waiver. And in that case the court held that a confession may not be held involuntary solely on the basis of mental health evidence, but it did not suggest that coercive police activity is required for finding invalid any other type of Miranda waiver. In fact, three circuits have followed that case to say that it is solely on the basis of voluntariness and not relevant to the knowing and intelligent inquiry. And in Colorado, the reason they were so focused on voluntariness and coercion is because the suspect was not in custody. Here, of course, there's no question that Mr. Miller was in custody during the interrogation. So the facts look very different when you realize that he was in custody and, of course, when you look at all of his impairments together. I'd like to just go over Mr. Miller's impairments once more for the court because I think those are the most important factor in looking at whether his waiver was knowing, intelligent, and voluntary. Mr. Miller, as we've said many times, is mentally retarded, which means not only that he has very limited intellectual abilities, but that he is very suggestible, that he is most likely to give a yes or no answer to a question instead of being able to explain because he doesn't want to try and have to explain. He's very childlike. Mr. Miller completed only the fourth grade, and that was in special education. He has brain damage independent of his mental retardation, as I said earlier, and that affects his reasoning abilities and his ability to learn from experience, as we learned from the Commonwealth's doctor. He was abused terribly as a child, both from uncles and from other people in the juvenile justice system, and he suffered post-traumatic stress disorder from that, and he was suicidal at the time he gave these waivers. If this evidence had been presented in a compelling fashion to the suppression court, there is a reasonable probability of a different outcome. No further questions? No further questions. Okay. Thank you very much. The case was well-argued. We will take it under advice. Thank you. This court will adjourn the court.